IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PONGITINI LATU FONUA, JR.,<br><br>Defendant. | Case No. 18-cr-00070-DKW-1<br><br>**ORDER DENYING DEFENDANT PONGITINI LATU FONUA, JR.'S MOTION TO SUPPRESS WIRETAP EVIDENCE** |

Defendant Pongitini Latu Fonua, Jr. moves to suppress evidence obtained from wiretaps authorized on two separate occasions by two district judges of this Court. Fonua does so on one principal basis: the affidavits in support of the wiretap applications insufficiently established the necessity of the wiretap. Having reviewed the pertinent affidavits, the parties' written and oral arguments, and the record, the Court disagrees. Notably, each standalone affidavit explains in detail the methods used to monitor the alleged drug trafficking conspiracy at issue in this case, the results and failures of those methods, and why other methods would be futile or too dangerous. Having done so, the affidavits more than sufficiently establish the necessity of the wiretaps approved here. Therefore, as more fully explained below, Fonua's motion to suppress, Dkt. No. 490, is DENIED.

## BACKGROUND

1. **The First Wiretap Application**

On September 5, 2014, Special Agent Joel Rudow of the Federal Bureau of Investigation (SA Rudow) filed an affidavit in support of a wiretap application for authorization to intercept communications from a telephone number ending in 4589, referred to therein as "Target Telephone #6" or "TT6." TT6 was being used by an unknown male referred to as "Tid" (the First Affidavit). Dkt. No. 490 at 32-79.[1] The First Affidavit stated the following pertinent information with respect to TT6.

On August 11, 2014, a call was placed from Target Telephone #4 (TT4), used by Kalisitiane Takivalu Oliveti, a co-defendant in this case, to TT6. *Id*. at 45. During the call, Oliveti sought to obtain one kilogram of cocaine and one pound of crystal methamphetamine from Tid with Tid quoting a price of $40,000 to $45,000 for a kilogram of cocaine. *Id*. at 46-47. On August 18, 2014, Tid placed a call from TT6 to TT4. *Id*. at 47. Based upon SA Rudow's experience, during the call, Tid asked Oliveti if his drug customers were ready to make a purchase, and Oliveti responded in the affirmative. *Id*. at 48. On August 24, 2014, Oliveti placed a call from TT4 to TT6 and spoke with Tid. *Id*. at 49. Based upon SA Rudow's experience, during the call, Oliveti asked Tid how quickly a courier could deliver

---

[1] In citing the affidavits at issue in this case, which are attached to the motion to suppress, the Court cites to the page numbers assigned at the top right corner of said document, *i.e.* "Page 32 of 148."

crystal methamphetamine, and Tid responded that it would only take one day if Oliveti had the money ready. *Id*. at 50.

The First Affidavit provided the following explanations for the need to intercept TT6. No physical surveillance had been conducted of Tid because Tid's location was unknown. *Id*. at 55. Moreover, physical surveillance of Tid's co-conspirator, Oliveti, had proven difficult for numerous reasons, including Oliveti not owning a vehicle or residence on Maui. *Id*. at 55-56. No attempts had been made to use GPS trackers on TT6 or on the vehicles driven by the other subjects of the investigation. *Id*. at 57. SA Rudow stated, though, that he was applying for court authorization to obtain GPS information on TT6. *Id*. Further, the investigation had used five confidential sources to obtain information on drug trafficking activities of members of the organization, though none of the five were familiar with Tid. *Id*. at 57-59. Further, an "undercover employee" had established a relationship with one of the members of the drug trafficking organization, but had been unsuccessful in identifying all of the participants. *Id*. at 60-62. For example, although SA Rudow had attempted to attract a source of supply to a drug transaction involving the undercover employee, this attempt had been unsuccessful. *Id*. at 61-62. Further, search warrants, a grand jury investigation, and interviews with associates of the drug trafficking organization had not been used because of various reasons, including the risk to the investigation and

3

a lack of information on potential target locations and participants. *Id*. at 63-69. Further, pen register and trap and trace information had been used "extensively" during the investigation. *Id*. at 69-70. This information had revealed some of the participants, but had not, in itself, provided proof of illegal activities. *Id*. at 70. Further, wiretaps had been attempted on TT4, which had partially identified Tid, but had not fully identified the drug trafficking organization's membership. *Id*. at 71.

Judge Kobayashi of the U.S. District Court for the District of Hawaiʻi subsequently approved the wiretap of TT6 sought by the First Affidavit. *Id*. at 80.

2. **The Second Wiretap Application**

On October 14, 2014, SA Rudow filed an affidavit in support of an application to renew interception of communications from TT6 (the Second Affidavit). *Id*. at 82-147.[2] Unlike the First Affidavit, the Second Affidavit identified the user of TT6 to be Pongitini Latu Fonua, Jr, the instant defendant. *See id*. at 92. The Second Affidavit provided the following pertinent information with respect to TT6.

Since June 2009, SA Rudow had been investigating a drug trafficking organization responsible for the distribution of cocaine and crystal methamphetamine on Maui. *Id*. at 101. The investigation had identified Oliveti as a distribution-level member of the organization and Fonua as Oliveti's source of

---

[2] The Second Affidavit also sought to renew interception of TT4. Dkt. No. 490 at 83.

4

supply.  *Id*.  From September 6, 2014 to October 4, 2014, various calls were made to or from TT6 concerning drug trafficking activities.  *Id*. at 108-117.  For example, on September 12, 2014, Fonua called "UM1812" on TT6.  *Id*. at 111.  Based upon SA Rudow's experience, during the call, Fonua told UM1812 that he had been unsuccessful in collecting a drug debt and would shoot the individual owing the debt.  *Id*.  On October 3, 2014, Special Agent P.J. Winston of the Drug Enforcement Administration told SA Rudow that a confidential source, known as "CS5", reported that he was familiar with "Tid" as a large-scale distributor of crystal methamphetamine from California.  *Id*. at 116.  CS5 was not in a position, though, to contact Tid, much less to arrange a transaction.  *Id*. at 117.

The Second Affidavit provided the following reasons for the need to intercept TT6.  Physical surveillance of Fonua had been "extremely difficult" because he employed detection and avoidance techniques "constantly."  *Id*. at 118.  For example, during vehicle surveillance, cars occupied by Fonua made U-turns, drove slower than other traffic, circled blocks, and parked in areas out of sight from regular roadways.  *Id*.  Although GPS tracking had been obtained on TT6, the accuracy of the same was not precise.  *Id*. at 121.  Further, other than CS5, none of the four other confidential sources used in the investigation were familiar with Fonua.  *Id*. at 122-124.  An "undercover employee" had established relationships with two of the members of the drug trafficking organization, but had been unable to uncover the

5

full scope of the same or identify all of its participants.  *Id*. at 125-126.  Further, search warrants, a grand jury investigation, and interviews with associates of the drug trafficking organization had not been used because of various reasons, such as risks to the investigation and a lack of information on potential targets.  *Id*. at 127-133.  Further, pen register and trap and trace information had been used "extensively" during the investigation to assist in identifying participants in the drug trafficking organization, but had not provided proof of illegal activities.  *Id*. at 134-135.  Also, while wire interception of TT4 had been used in the investigation, which helped to identify Fonua, that alone had not achieved the goals of identifying the drug trafficking organization's membership and prosecuting the same.  *Id*. at 135-136.  Further, while wire interception of TT6 had resulted in partial identification of additional participants, complete identification of the same had not yet been achieved.  *Id*. at 136-137.

Judge Seabright of the U.S. District Court for the District of Hawaiʻi subsequently approved the renewed wiretap of TT6 sought by the Second Affidavit.  *Id*. at 147.

3. **This Case**

On October 9, 2019, Fonua, along with 11 co-defendants, was indicted in an eight-count indictment that charged him with conspiracy to distribute

methamphetamine and cocaine and possession with the intent to distribute methamphetamine.  Dkt. No. 75.

On July 30, 2021, Fonua, represented at the time by Attorney Gary Singh, filed a motion to suppress evidence obtained from the September 5, 2014 and October 14, 2014 applications for wire interception of TT6.  Dkt. No. 490.  In the motion to suppress, Fonua made two principal arguments: (1) there was a lack of necessity for the wiretap applications; and (2) the wiretap applications misrepresented the use of confidential sources and an undercover officer.  With respect to necessity, Fonua argued that the government failed to conduct GPS tracking of TT6, something which also prevented it from performing physical surveillance.  *Id*. at 8-9.  Fonua further argued that the government could have obtained the identity of Tid by continuing to intercept TT4.  *Id*. at 10-11.  Fonua also argued that, although SA Rudow stated that surveillance of Fonua was extremely difficult, SA Rudow provided no reports, photos, or other evidence to support this statement.  *Id*. at 12-13.  With respect to misrepresentation, although not entirely clear, Fonua appeared to argue that, because the wiretap applications "completely failed to meet the statutorily required level of necessity[,]" the applications "misle[d]" the judge who authorized the wiretaps.  *Id*. at 22.

After scheduling the motion to suppress for hearing in September 2021, Dkt. No. 491, the government filed an opposition to the motion, Dkt. No. 502,[3] to which Fonua replied. Dkt. No. 503. Two days later, on August 27, 2021, Attorney Singh moved to withdraw as counsel, Dkt. No. 504, which was granted on September 9, 2021, Dkt. No. 507. After the appointment of Attorney Dana Ishibashi as new defense counsel, Dkt. No. 508, the September 2021 hearing on the motion to suppress was vacated and re-scheduled for December 9, 2021, Dkt. No. 516. At the request of Attorney Ishibashi, the hearing was re-scheduled three more times, finally until June 3, 2022. Dkt. Nos. 527, 540, 568, 581, 583.

On May 2, 2022, Fonua filed a supplemental memorandum in support of the motion to suppress. Dkt. No. 598. Therein, other than largely summarizing the language of the First Affidavit and providing running commentary on the same, the main thrust of Fonua's argument appeared to be that the same failed to show necessity for the wiretaps. *See id*. at 3-13. Fonua also asserted that the government could not use the showing of necessity for one application to supply the necessity for another application. *See id*. at 13.

On May 23, 2022, Attorney Ishibashi filed a motion to withdraw as Fonua's counsel, Dkt. No. 602, which was also scheduled for hearing on June 3, 2022, Dkt.

---

[3] The government has also submitted additional authority with respect to the motion to suppress. Dkt. No. 537.

No. 603. In so scheduling, the Court instructed the parties to be prepared to proceed with the motion to suppress at the June 3, 2022 hearing. *Id*.

On June 3, 2022, a hearing was held on Attorney Ishibashi's motion to withdraw and the motion to suppress. Dkt. No. 606. First, the Court denied the motion to withdraw to the extent that, for the reasons provided on the record, Attorney Ishibashi was not permitted to withdraw prior to the hearing on the motion to suppress.[4] Second, a hearing on the motion to suppress then occurred, with Fonua calling one witness: SA Rudow. After SA Rudow's testimony and closing arguments, the motion to suppress was taken under advisement. *Id*.

This Order now follows.

## LEGAL STANDARD

Taken together, "§§ 2518(1)(c) and (3)(c) require a showing of necessity before a district court can issue a wiretap order." *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988). "The purpose of the necessity requirement is to ensure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *Id*.

The necessity analysis involves a two-part assessment. First, under 18 U.S.C. Section 2518(1)(c), a wiretap application must include a "full and complete statement as to whether or not other investigative procedures have been tried and

---

[4] Attorney Ishibashi's motion to withdraw was otherwise referred to the assigned Magistrate Judge for decision. Dkt. No. 606.

failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Rodriguez*, 851 F.3d 931, 938 (9th Cir. 2017). The court reviews *de novo* whether the application includes such a statement. *Id.*

Second, if the affidavit meets the "full and complete statement" requirement, the court then reviews the issuing court's conclusion that the wiretap was necessary. *Id.* The issuing judge's decision that the wiretap was necessary is reviewed for abuse of discretion. *Id.* "The necessity requirement can be satisfied by a showing in the application that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case." *United States v. Garcia-Villalba*, 585 F.3d 1223, 1228 (9th Cir. 2009). Further, necessity "is evaluated in light of the government's need not merely to collect some evidence, but to develop an effective case against those involved in the conspiracy." *Id*.

## DISCUSSION

In the motion to suppress and accompanying briefing, Fonua principally contends that the affidavits in support of the applications for a wiretap of TT6 failed to establish the requisite necessity for interception.[5] For the reasons discussed below, the Court disagrees.

---

[5] In the motion to suppress, Fonua also appeared to argue that the affidavits misrepresented or omitted information. Dkt. No. 490 at 15-17, 20-23. The only *specific* misrepresentation, or "discrepancy" as Fonua puts it, identified, however, is the fact that the First Affidavit stated that a confidential source was unaware of Tid, while the Second Affidavit stated that the same source was aware of Tid. *Id*. at 15-17. However, Fonua provides no meaningful explanation, beyond hyperbole, why this constitutes a "discrepancy." Put simply, there is nothing in the record to

10

First, Fonua argues that necessity was not established because law enforcement failed to conduct less intrusive investigative procedures, specifically, physical surveillance. Dkt. No. 490 at 8-10; Dkt. No. 598 at 9-10. This, however, is an inaccurate portrayal of the First and Second Affidavits. The First Affidavit stated that the identity and location of Tid were unknown and, therefore, it was not possible to surveil him. While not knowing the identity of an individual does not generally warrant immediate resort to a wiretap, that is not what occurred here. Rather, the First Affidavit explained that pen register and trap and trace devices had been used extensively in the investigation, as had a wiretap on TT4. In fact, it was those devices that had alerted authorities to TT6 in the first place. While Fonua contends that continued wiretapping of TT4 may have provided the identity of Tid, Dkt. No. 490 at 10-11, it had not up to that time, and, moreover, he ignores the fact that the identity of Tid was not the sole goal of the investigation. Rather, the goal was to determine all of the participants in the conspiracy, including their roles, sufficient to facilitate prosecution.

---

suggest that the change in the two affidavits is anything more than an update in the information provided to SA Rudow, *i.e.*, at the time of the First Affidavit, the confidential source in question reported that he was unaware of Tid, while at the time of the Second Affidavit approximately a month later, the source reported he was or had become aware of Tid. Therefore, in light of Fonua's arguments in this regard, the Court does not find that the First and Second Affidavits contained any misrepresentation, misleading omission, or discrepancy.

[6] Because Fonua does not challenge the wiretap applications on the basis of an alleged lack of probable cause, the Court does not address any such matter herein.

Further, the investigation had utilized confidential sources and an undercover employee, but none of those investigative procedures had proven successful in identifying Tid or any of the other participants in the drug trafficking organization. The First Affidavit also explained why search warrants, grand jury investigations, and interviews would be unhelpful because, *inter alia*, they might compromise the ongoing investigation. In other words, the First Affidavit explained why some investigative procedures had helped in the investigation, but could go no further, and why others could not help, in light of the goals of the investigation. This was more than sufficient. *See Garcia-Villalba*, 585 F.3d at 1228-31 (concluding that a district court did not abuse its discretion in finding a wiretap to be necessary where the affidavit detailed difficulties in physical surveillance, problems with alerting defendants to the investigation, and the government's desire to identify the role of all participants in the offense); *United States v. Bennett*, 219 F.3d 1117, 1121-22 (9th Cir. 2000) (upholding the necessity of a wiretap where the affidavit explained how certain investigative procedures had been successful in obtaining limited information on a drug trafficking organization, but had not provided information "about the extended organization….").

The Second Affidavit provided equally sufficient explanations of necessity. In particular, with respect to physical surveillance, after identifying Fonua as Tid, investigators attempted to surveil Fonua and failed. Notably, with specific

examples, SA Rudow explained how surveillance of Fonua had been "extremely difficult" due to his use of avoidance techniques, such as making U-turns and last second turns and switching vehicles. While Fonua argues that SA Rudow failed to "corroborate" these examples with "evidence", Dkt. No. 490 at 12, he provides no legal support for the principle that the government must provide the written reports of the officers following a suspect in order to support the contention that the suspect was followed and escaped. Instead, the government must provide examples specific to the suspect at issue, which SA Rudow did in the Second Affidavit. *See Garcia-Villalba*, 585 F.3d at 1228 ("We have upheld wiretaps in situations, like this one, where *the affidavit* explains in reasonable, case-specific detail why physical surveillance efforts have been unsuccessful.") (emphasis added). The Second Affidavit further explained that pen register and trap and trace devices had been used, as had the wiretap on TT4, confidential sources, and an undercover employee. Those investigative avenues, however, could not reach further into the drug trafficking organization to determine the sources of supply for someone like Fonua. *See Bennett*, 219 F.3d at 1121-22. The Second Affidavit also explained why procedures, such as search warrants, would not succeed, including Fonua's lack of a residence on Maui.

In his papers and at oral argument, Fonua also argued that the government cannot "shoe-horn" a showing of necessity from one affidavit to another. Dkt. No.

598 at 13; Dkt. No. 490 at 17-20.  However, other than using the word "shoe-horn", Fonua fails to identify any earlier affidavit that is being shoehorned into a later one or even any information that is likewise being re-used.  In any event, the argument is misplaced here.  Notably, to the extent Fonua is attempting to contend that the affidavits in support of wiretapping TT6 have "shoe-horned" information from the applications to wiretap TT4, *see* Dkt. No. 598 at 13, the Court disagrees.[7]  As discussed, in the First and Second Affidavits, SA Rudow provided information specific to TT6, Tid, and/or Fonua as to why wiretapping was necessary.  Thus, while historical facts pertinent to TT4 are recited in the First and Second Affidavits, this was entirely proper.  *See Garcia-Villalba*, 585 F.3d at 1232 ("Although the government may not rely on the conclusion that a previous wiretap was necessary to justify the current application, historical facts from previous applications, particularly those within the same investigation, will almost always be relevant.").[8]

---

[7] If this is the argument Fonua seeks to make, the Court again observes that no *specific* "shoehorning" is identified.  To the extent Fonua might intend to reference the use of information, in the First Affidavit, related to the difficulty of surveilling Oliveti, the Court notes that, even if this information was omitted from the First Affidavit, it would not dissipate the necessity shown for the wiretap of TT6 in light of the use of confidential sources, an undercover employee, a wiretap on TT4, and pen register and trap and trace devices to no avail in identifying Tid or other members of the drug trafficking organization.

[8] In his supplemental brief and at oral argument, Fonua relied in this regard on *United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005).  However, that case merely acknowledges the same principle as *Garcia-Villalba*: that necessity for one wiretap application cannot be established by the collective force of multiple such applications.  *Id*. at 1115.  It certainly does not stand for the proposition that *historical facts* from prior applications cannot be used in later ones.

## **CONCLUSION**

For the foregoing reasons, Fonua's motion to suppress wiretap evidence, Dkt. No. 490, is DENIED.

IT IS SO ORDERED.

DATED: June 9, 2022 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*United States v. Fonua,* Case No. 18-cr-00070-DKW-1; **ORDER DENYING DEFENDANT PONGITINI LATU FONUA JR.'S MOTION TO SUPPRESS WIRETAP EVIDENCE**